# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS RAMON SALAS RAMIREZ,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.  1:23-cv-00577-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT; DIRECTING THE CLERK OF THE COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF LUIS RAMON SALAS RAMIREZ AND TO CLOSE THIS ACTION<br><br>(ECF Nos. 15, 18, 19) |

## I.

## INTRODUCTION

Luis Ramon Salas Ramirez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and this case be remanded for

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 6, 11, 12.)

further proceedings, arguing the ALJ applied the wrong analysis in determining that Plaintiff had less than marked ability to care for himself; and failed to offer any reasons to reject Plaintiff's symptom complaints.

For the reasons explained herein, Plaintiff's motion for summary judgment shall be denied and Defendant's cross motion for summary judgment shall be granted.

## II.

## BACKGROUND

### A.     Procedural History

An application for supplemental security income was protectively filed for Plaintiff, an individual under the age of 18, on December 4, 2017. (AR 101.) Plaintiff's application was initially denied on May 14, 2018, and denied upon reconsideration on August 22, 2018. (AR 116-19, 123-26.) Plaintiff requested and received a hearing before Administrative Law Judge Erin Justice ("the ALJ"). Plaintiff and his mother did not appear for a telephonic hearing on March 22, 2021, however the hearing proceeded with testimony from a medical expert. (AR 46-64.) Plaintiff and his mother failed to appear for a supplemental hearing on July 20, 2021. (AR 65-9.) On January 31, 2022, Plaintiff and his mother appeared and testified at a supplemental telephonic hearing. (AR 70-90.) On February 28, 2022, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 16-31.) On February 14, 2023, the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

### B.     The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, February 28, 2022:

1.  Plaintiff was an adolescent on December 4, 2017, the date application was filed, and is currently an adolescent.

2.  Plaintiff has not engaged in substantial gainful activity since December 4, 2017, the application date.

3.  Plaintiff has the following severe impairments: post-traumatic stress disorder (PTSD); anxiety; and major depressive disorder.

4.  Plaintiff does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments.

5.  Plaintiff does not have an impairment or combination of impairments that functionally equals the severity of the listings.

6.  The ALJ found that Plaintiff has not been disabled, as defined in the Social Security Act, since December 4, 2017, the date the application was filed.

(AR 23-30.)

## III.

## LEGAL STANDARD

### A.    The Disability Standard for Children's Social Security Income

To be eligible for disabled child's insurance benefits, the claimant must meet the Social Security Act's definition of "child," be unmarried, be below specified age limits (18 or 19) or be under a disability which began prior to age 22 and was dependent on the insured at the time of the insured's death.  Astrue v. Capato ex rel. B.N.C., 566 U.S. 541, 547 (2012) (quoting 42 U.S.C. § 402(d)(1), see also Smolen v. Chater, 80 F.3d 1273, 1279–80 (9th Cir. 1996) (quoting 42 U.S.C. § 402(d)(1)(B)(ii)) ("To be eligible for disabled child's insurance benefits, the claimant must, 'at the time his application is filed,' be 'under a disability . . . which began before he attained the age of 22.' ").  A child is disabled for the purposes of the Social Security Act if he suffers from "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1085 (9th Cir. 2000) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)).

The Social Security regulations establish a three-step sequential evaluation process to be followed in a child disability case.  20 C.F.R. § 416.924.  At the First Step, the Commissioner must determine whether the claimant is working and whether the work is substantial gainful activity; if so, a finding of nondisability is made and the claim is denied.  20 C.F.R. § 416.924(b).  At the Second Step, where the claimant is been found not to be engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a severe medically determinable impairment or combination of impairments; if not, a finding of nondisability is made and the claim

is denied.  20 C.F.R. § 416.924(c).  If a severe impairment is found, the Commissioner continues to the Third Step, in which the Commissioner must determine whether the claimant's impairment meets or medically or functionally equals an impairment in the Listing of Impairments ("the Listing").  20 C.F.R. § 416.924(d).  If the impairment meets or equals an impairment in the Listing, it is presumed to cause "marked and severe functional limitations," provided it also meets the duration requirement, and benefits are awarded.  20 C.F.R. § 416.924(d).

"The claimant's impairment will medically equal a listed impairment 'if the medical findings are at least equal in severity and duration to the listed findings.' "  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting Interim Final Rules, 62 Fed. Reg. at 6424; 20 C.F.R. § 416.926(a)(1997).)   The impairment will be considered to be functionally equivalent if the claimant has marked limitation in two areas or an extreme limitation in one area. Howard, 341 F.3d at 1022 (quoting Interim Final Rules, 62 Fed. Reg. at 6425, 20 C.F.R. § 416.926a(b) (2) (1997)).  Functional equivalence is considered in five areas: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and (vi) Health and physical well-being."  20 C.F.R. § 416.926a(b)(1).

In evaluating the claimant's ability to function in each domain, the ALJ is to consider the following questions regarding whether the impairment affects the claimant's function and whether the claimant's activities are typical of other children of the same age who do not have impairments: (1) what activities can the claimant perform?; (2) what activities is the claimant not able to perform?; (3) which of the claimant's activities are limited or restricted compared to other children the claimant's age who do not have impairments?; (4) where does the claimant have difficulty with his/her activities-at home, in childcare, at school, or in the community?; (5) does the claimant have difficulty independently initiating, sustaining, or completing activities?; and (6) what kind of help does the claimant need to do his/her activities, how much help does the claimant need, and how often does the claimant need it?   20 C.F.R. § 416.926a(b)(2)(i)-(vi).  When the claimant's impairment does not meet or equal an impairment in the Listing, or does not meet the durational requirement, the claimant is determined to be not disabled.  20 C.F.R. § 416.924(d).

1    **B.    Standard of Review**

2    Congress has provided that an individual may obtain judicial review of any final decision

3    of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

4    determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

5    the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

6    Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

7    the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

8    405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).   "Substantial evidence is relevant

9    evidence which, considering the record as a whole, a reasonable person might accept as adequate

10   to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting

11   Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson

12   v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential

13   clearly erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high." Biestek,

14   139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a

15   preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland),

16   993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen,

17   80 F.3d at 1279.  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where

18   the error is harmless. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006).

19   Moreover, the burden of showing that an error is not harmless "normally falls upon the party

20   attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

21   Finally, "a reviewing court must consider the entire record as a whole and may not affirm

22   simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153,

23   1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

24   Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

25   review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th

26   Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

27   this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

28   for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

1    the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

2    400 F.3d 676, 679 (9th Cir. 2005)).

3                                        **IV.**

4                          **DISCUSSION AND ANALYSIS**

5         As stated above, Plaintiff raises two issues on appeal: (1) the ALJ's determination that

6    Plaintiff did not functionally equal a listed impairment is unsupported by substantial evidence as

7    the ALJ applied an incorrect standard in determining that Plaintiff had less than a marked limitation

8    in his ability to care for himself; and (2) that the ALJ failed to offer any reasons to reject Plaintiff's

9    symptom complaints and therefore the RFC does not include limitations consistent with his

10   symptom complaints.

11        **A.    Whether the ALJ Erred in Determining Plaintiff had Less than Marked**
            **Limitations in the Area of Ability to Care for Himself**
12

13        Plaintiff argues that the ALJ's analysis shows that he failed to properly understand the nature

14   of the areas of functioning and is therefore unsupported by substantial evidence.   Plaintiff

15   challenges the finding that Plaintiff maintained the ability to care for himself asserting the ALJ

16   focused on Plaintiff's ability to appear well groomed, to drive to stores, and failure to provide

17   testimony regarding carryout his personal care.  Plaintiff argues that the evidence shows that he has

18   much more difficulty in his ability to maintain his emotional state, cope with stress, and maintain

19   his own health and living area.  Plaintiff asserts this is evidenced by his documented history of self-

20   harm, attempted suicide, suffering angry outbursts, and needing reminders from his mother to

21   handle his chores.  (Pl.'s Motion for Summary Judgment ("MSJ" 6,[2] ECF No. 16.)

22        Plaintiff contends that the ALJ made no mention of Plaintiff's self-harm, and this directly

23   relates to his ability to maintain a healthy emotional state. Plaintiff argues that this lack of

24   explanation as to why this relevant evidence was ignored is error.  Further, Plaintiff argues that the

25   explanation the ALJ did provide does not support the conclusion that Plaintiff had a less than

26   marked limitation in this area, as the evidence does not support that Plaintiff groomed himself or

27

28   [2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the
     CM/ECF electronic court docketing system.

                                          6

received help or reminders from his mother.  Additionally, Plaintiff asserts that his ability to drive to the grocery store does not support the conclusion as it is wholly unexplained how his ability to drive to the grocery store on an irregular basis equates to an ability to maintain a healthy emotional and physical state.  (MSJ  7.)

Plaintiff asserts that the failure to mention his self-harm and his suicide attempt, combined with the flawed explanation provided requires that the less than marked limitation be found to be unsupported by substantial evidence.  Further, Plaintiff states the error is harmful and remand is required.  (MSJ 8.)

Defendant counters that Plaintiff has not shown that the ALJ erred.  (Def.'s Cross Motion for Summary Judgment and Opposition ("Opp.") 4, ECF No. 18.)  Defendant argues that the ALJ reasonably concluded that Plaintiff had a less than marked limitation in the domain.  Defendant states, that consistent with the regulations, the ALJ considered that Plaintiff had been compliant with medication for the past year and had expressed an interest in Forensics with aspirations to become a crime scene investigator.  Further, Defendant asserts that the ALJ considered that Plaintiff appeared well groomed for appointments and did not report any struggles with his personal care. Defendant also notes that Plaintiff's mother reported that Plaintiff was able to care for his personal needs, such as cleaning himself, brushing his teeth and combing his hair with no reported limitations in any of these abilities.

Additionally, Defendant contends that consistent with the regulations, the ALJ considered that Plaintiff enjoyed playing soccer, playing volleyball, playing video games, and listening to music, and that he sometimes drove to the grocery store.  (Opp. 5.)  Additionally, Defendant notes that statements from Plaintiff's teachers suggest only a slight problem in this domain, the medical expert testified that Plaintiff had less than a marked limitation in this domain, and there is no opinion suggesting a marked limitation in this domain.  Defendant argues that the ALJ reasonably found a less than marked limitation and while Plaintiff disagrees with the finding, he has not shown that the ALJ erred.  (Opp. 6.)

Defendant asserts that the evidence supports symptom improvement with medication, therapy, and exercise and that he appeared well groomed at appointments and did not report any

struggles in carrying out his personal care.  (Opp. 6-7.)  Defendant contends that Plaintiff is seeking to have this court reweigh the evidence and find in his favor, but that the evidence could be subject to an alternative interpretation does not demonstrate that the ALJ erred.  (Opp. 7.)

Plaintiff replies that Defendant's post hoc rationalization provides no legal argument in opposition to his contentions.  Plaintiff argues that Defendant wholly failed to address his contentions, including that the ALJ misrepresented the evidence. Plaintiff asserts that Defendant has failed to provide a legal response to Plaintiff's contentions and remand is required.  (Pl.'s Reply 2, ECF No. 19.)

1.   Legal Standard

A child's ability under this domain is assessed based on how well he is able to maintain a healthy emotional and physical state, including meeting his physical and emotional wants and needs in appropriate ways, how he copes with stress and changes in his environment, and whether he takes care of his own health, possessions, and living area.  20 C.F.R. § 416.926a(k).  Adolescents "should feel more independent from others and should be increasingly independent in all of [their] day-to-day activities." 20 C.F.R. § 416.926a(k)(v). They may "sometimes experience confusion in the way" they feel about themselves and "should begin to notice significant changes in [their bodies'] development."  Id.  Although adolescents may have anxiety and worry about themselves or their bodies, they should "begin to discover appropriate ways to express [their] feelings, both good and bad (e.g., keeping a diary to sort out angry feelings or listening to music to calm yourself down)."  Id.  They "should begin to think seriously about your future plans, and what [they] will do when [they] finish school."  Id.  Examples of limited functioning in caring for oneself include:

    (i)   You continue to place non-nutritive or inedible objects in your mouth.
    (ii)  You often use self-soothing activities showing developmental regression (e.g., thumbsucking, re-chewing food), or you have restrictive or stereotyped mannerisms (e.g., body rocking, headbanging).
    (iii) You do not dress or bathe yourself appropriately for your age because you have an impairment(s) that affects this domain.
    (iv) You engage in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take your medication), or you ignore safety rules.
    (v)  You do not spontaneously pursue enjoyable activities or interests.
    (vi) You have disturbance in eating or sleeping patterns.

20 C.F.R. § 416.926a(k)(3).

2.    <u>Analysis</u>

In addressing why Plaintiff did not meet or equal the severity of a listed impairment, the ALJ considered that Plaintiff did not demonstrate a minimal capacity to adapt to changes in the environment.  (AR 24.)  The ALJ found that Plaintiff demonstrated intact judgment and insight and had only one, short inpatient stay in the record.  (AR 24.)  The ALJ considered Plaintiff's continued mental health treatment and found that Plaintiff did not meet the criteria of a listed impairment.  (AR 24.)

In determining that Plaintiff does not have an impairment that functionally equals the severity of the listings, the ALJ considered how Plaintiff functioned in the six domains and found that Plaintiff had no limitations or less than a marked limitation in all domains.  (AR 25.)

**a.    Whether the ALJ erred in finding Plaintiff was able to perform personal care**

Plaintiff only challenges the finding in the domain of ability to care for himself.  In making this finding the ALJ stated,

> The claimant's mother stated the claimant struggled against completing schoolwork and he needs to be reminded to do chores (7E; 3F/7).  However, the claimant appeared well groomed at appointments (3F/13, 16).  He also testified that he will drive to the grocery store sometimes.  Lastly, the claimant did not report any struggles with carrying out his personal care in his testimony. Therefore, he has a less than marked limitation in this domain.

(AR 26.)

In making these findings, the ALJ noted the following records.  On June 22, 2018, Plaintiff's mother completed an adult function report for Plaintiff.  (AR 490-97, 505-12.)  She stated that from the time he wakes up until he goes to bed, he eats, asks for things, gets upset, goes back to sleep, and does not eat.  He has been the same since he was three years old.  Sometimes he does not sleep and is scared.  He has no problem with his personal care.  (AR 506.)  She reminds him to take care of his personal needs and grooming and to take his medication.  He is a minor and does not cook.  (AR 507.)  He does not do household chores because he is a minor.  (AR 507-08.)  The second record cited by the ALJ is a treatment plan that does not address Plaintiff doing chores.  (AR 762.)

Plaintiff goes outside once or twice a day to play, but sometimes just sits.  He is able to go out alone.  He does not drive because he is a minor.  He shops for food with his mother.  He does

1   not handle money because his mother is his payee.  (AR 508.)  His hobby is football, and he plays
2   once a week on Wednesday or Thursday.  He spends time playing with his brother once a week.
3   He does not need to be reminded to go places nor does he need someone to accompany him.  (AR
4   509.)  He hardly has any friends and does not like to socialize with anyone.  His condition affects
5   his memory, ability to complete tasks, concentrate, understand, follow instructions and getting
6   along with others.  He is able to pay attention for about five minutes.  He does not follow written
7   or spoken instructions well.  (AR 510.)  He does not get along well with authority figures.  He does
8   not handle stress or changes in routine well.  He feels stress because he feels threatened.  (AR 511.)
9   He takes medication and has no side effects.  (AR 512.)

10      The ALJ noted that Plaintiff appeared well groomed at his appointments.  (AR 768, 771.)
11  Plaintiff argues that there is no indication in any of the treatment notes whether Plaintiff was
12  grooming himself or if he received help or reminders from his mother.  (Mot. 7.)  Although the ALJ
13  stated that Plaintiff needed to be reminded to do chores, the record itself states he does not do any
14  chores because he is a minor, rather he requires reminders to take care of his personal needs and
15  grooming and to take his medication.  (AR 507.)  Although the ALJ found, and the parties argue,
16  that Plaintiff needs reminders to do chores, his mother specifically stated Plaintiff did not need
17  reminders to take care of chores.  (AR 507.)

18      On January 5, 2018, Plaintiff's mother completed a function report for Plaintiff.  (AR 457-
19  63.)  She reported that Plaintiff has no impairments in speech, hearing, communication, ability to
20  understand and use what he has learned, physical ability, or ability to care for his personal needs.
21  (AR 458-63.)

22      The ALJ also noted that Plaintiff did not report any difficulties in carrying out his personal
23  care during the hearing.  The ALJ could reasonably find that the evidence supported a finding that
24  Plaintiff maintained the functioning to care for his personal needs.

25  **b. Whether the ALJ erred by failing to consider that Plaintiff's ability to maintain a health emotional state and deal with stress**
26
27  Plaintiff also argues that the evidence demonstrates that he has much more difficulty in his
28  ability to maintain a healthy emotional state and cope with stress.  Plaintiff contends that this is

demonstrated by his history of self-harm, attempting suicide, angry outbursts, and the ALJ did not mention Plaintiff's history of self-harm.  (MSJ 6-7.)  Plaintiff also argues his need for reminders from his mother to handle chores is also significant.  However, as discussed above, this is a misrepresentation of the record.

The ALJ did consider that Plaintiff reported that his siblings will cause him anxiety and that he will yell at them.  (AR 27, 80, 81.)  The ALJ noted that Plaintiff stated his depression is improved with medication, but that he sometimes will still self-harm, such as punching and scratching himself two weeks prior to the hearing.  (AR 27, 82, 84.)  The ALJ considered that Plaintiff's mother and sister-in-law alleged that he has difficulty getting along with others and his mother alleged that he gets aggressive with others at times.  (AR 27, 79, 510, 523.)

While Plaintiff contends that the ALJ did not mention Plaintiff's history of self-harm, the ALJ did specifically address Plaintiff's inpatient psychiatric care in July 2017 for suicidal ideation and a self-strangulation attempt when he was 12 years old.  The ALJ noted that Plaintiff was discharged five days later, his insight and affect improved, and he denied suicidal ideation.  (AR 27, 729-48, 798.)  The ALJ then went on to discuss Plaintiff's subsequent treatment.

On July 26, 2017, Plaintiff was brought by his mother for a hospital discharge follow-up and mental health assessment.  (AR 27, 756.)  Plaintiff had been admitted to Exodus Youth Crisis Stabilization Center on July 18, 2017, and was discharged on July 22, 2017.  He reported that he was hospitalized for depression and suicidal thoughts.  He reported feeling depressed once a week, is easily distracted twice a week, argues with his mother, talks back to her, is irritable once a week, has been bullied in school, lies sometimes, has a history of physical abuse by his father, has been suspended from school three times for fighting, has difficulty with math, low self-esteem sometimes, keeps everything to himself, feels hopeless sometimes, has reduced interest in activities, is worried about losing his mom because she has diabetes, is shy, and experiences headaches and stomach aches when he feels stressed out.  He also reported that he stays to himself.  Plaintiff reported that his depression started in March when he was exposed to bullying, but his mother said his problems started when he was little.  (AR 756.)  Plaintiff reported that he wanted to be a musician when he grew up and he used music to get him away from his anger and depression.

Plaintiff reported that he had made three attempts to hang himself.  The first occurred in March and the last attempt was on July 17, 2017.  He first cut himself in March, he had cut himself on three occasions, but had stopped cutting two months prior.  (AR 758.)  Mental examination noted that Plaintiff wore casual attire appropriate for the weather.  Behavior was cooperative and within cultural norms.  Plaintiff shook his leg at times stating he was a bit nervous, and he was noted to be playful with his mother.  He was cooperative, guarded, reserved, and evasive toward the examiner. He was noted to be overly shy.  He reported having 4 or 5 friends, but stated he does not really like friends because they start drama, and he tries to stay away from drama.  Speech was noted to be soft.  Mood was irritable, sad, dysphoric, depressed, and worried.  When asked how he felt at the moment, he stated, "I feel great."  (AR  758.)  Affect was restricted, limited, constricted, inhibited. He was oriented to person, place, time and situation.  He denied delusions, hallucinations, distortions and there were no overt signs of psychosis.  Intelligence appeared to be average based on his responses throughout the interview.  Thought flow was linear, logical, coherent, and rational. He endorsed low self-esteem.  Immediate, short term, and recent memory were intact.  Abstraction and interpretation were intact.  Judgment and insight were impaired.  The record notes Plaintiff "currently experiences distress or impairments in the areas of social relationships, daily activities, health, and academic performance as a result of his depressive symptoms and angry outbursts. [He] minimizes his presenting problems and is reserved with this clinician."  (AR 27, 759.)

The ALJ further considered Plaintiff's mental health records from his continued mental health treatment.  On October 4, 2017, Plaintiff denied suicidal ideation and it is noted that he had previously refused medication, but he stated that therapy had been helpful.  He was well groomed, alert, and cooperative.  Examination notes his motor activity, cognition, speech, orientation, thought content, mood, and affect were normal.  His intelligence was average, and his insight and judgment were normal.  (AR 28, 782.)  Plaintiff was diagnosed with major depressive disorder, PTSD, and generalized anxiety disorder.  It was recommended he take Prozac to help his symptoms.  (AR 28, 783.)

On February 22, 2018, Plaintiff's mother called the school and reported that after she made him go to school, he said he would do something because he did not want to be at school which

was not typical of him.  He told the examiner that he was worried about his brother who was going to court on a domestic violence charge that day and was at risk of being deported because his brother was "not from here."  He stated he told his mother he would "do something" out of frustration and anger.  It was hard for him to be at school due to worry.  He reported he had not taken his medication for the past five days.  (AR 793.)  Plaintiff stated he had career goals, was a role model for his younger siblings and cared about them.  He also stated he has a good relationship with his mother, but when coping with stress his family does not talk but sends the message to "just move on, not to talk about it."  (AR 704.)  Plaintiff was noted to be calm and cooperative, at times smiling and interactive.  (AR 28, 704.)

On April 11, 2018, Plaintiff was 13 years old and taking Wellbutrin for his mental health symptoms and reported feeling better on his medication.  Examination notes he appeared well groomed and was alert and cooperative.  His motor activity, cognition, speech, orientation, thought content, mood, and affect were normal.  His intelligence was average, and his insight and judgment were normal.  (AR 28, 771.)

On May 29, 2018, Plaintiff was seen reporting that he had not been feeling sad and was doing good at school.  He had new people in school.  His mom reported that he has shown attitude by his siblings, and she still sees him very angry and frustrated. Mental examination noted that he is well groomed, and cooperative.  Plaintiff was alert.  Motor activity, cognition, speech, orientation, thought content, mood, affective range, and insight and judgment were normal.  Intelligence was average.  Plaintiff was noted to be stable on his medication.  It was noted that Plaintiff reported on March 18, 2018, that he was aggressive because he saw his father twice in the grocery store and it brings back memories of abuse.  (AR 28, 768.)

On May 3, 2018, Plaintiff underwent a psychological examination with Dr. Swanson.  (AR 28, 751-55.)  Plaintiff reported recently spending time in a psychiatric facility in 2017 due to suicidal ideation and that he took anti-depressant medication for a short time afterwards but ceased taking the medication.  (AR 28, 752.)  He reported that he had felt suicidal due to bullying at school but had not felt any suicidal ideation since because he was not feeling bullied.  Plaintiff stated he had a steady girlfriend, enjoys listening to music, plays soccer, plays volleyball, and enjoys video

games. His mother alleged sometimes Plaintiff "stresses" and slams the door at home.  (AR 28, 752.)  Plaintiff reported wanting to become a musician, singer, or coroner.  (AR 752.)  It was noted Plaintiff had been suspended a few times from school for fighting but reported no criminal activity or substance abuse. Furthermore, he reported having seven or eight friends at school.   (AR 28, 752.)

His appearance exhibited satisfactory concern for personal hygiene and grooming.  He was oriented to person, time, place, and situation.  His attitude was cooperative and friendly.  Eye contact was within normal limits. Plaintiff exhibited an average amount of motor movement with no marked idiosyncrasies. He exhibited a full range of affect. (AR 753.)  His mood was euthymic, and he reported feeling "normal…okay" and his speech was unremarkable.  He indicated he feels happy most days.  Plaintiff denied suicidal ideation and stated he has never been seriously suicidal. (AR 28, 753.)   Short term, recent, and remote memory were within normal limits.  He maintained satisfactory attention and concentration.  (AR 753.)  Plaintiff's IQ score of 81 was obtained through testing, placing him in the 10th percentile.  (AR 28, 753.)  Dr. Swanson opined,

> Luis denied any psychotic symptoms and there is no strong indication of serious psychopathological disturbance.  He enjoys hanging out with friends, playing sports, spending time with his girlfriend, and listening to music.

> Luis has the ability to understand and respond to increasingly complex requests, instructions, or questions in an age-appropriate manner.  He appears to have the ability to communicate by understanding, initiating, and using language in an age-appropriate manner.  There is no evidence of any deficit in ability to engage in age-appropriate physical activities.  He appears to have the ability to socially integrate with peers and adults in a mostly age-appropriate fashion.  He appears to have the ability to respond to stimuli in a mostly age-appropriate manner.  He seems to have the ability to engage in and sustain an activity at a pace that is mostly appropriate for his age.

(AR 754.)

Plaintiff was seen on August 13, 2018, reporting a depressed mood daily for the past three years.  (AR 28.)  He reported poor appetite five to seven times per week, poor concentration daily, low energy or fatigue daily, and feelings of hopelessness daily.  There were no thoughts of suicide or self-harm.  Plaintiff reported that due to the small class sizes and classroom time being only four hours per day, he was able to control his anger and raise his grades.  (AR 28, 829.)  He reported being able to make and maintain peer relationships, however, he spends the majority of time in his

room. He reported difficulty functioning in mainstream academic settings due to frequent conflict with peers.  It is noted that medication compliance is poor as he often misses doses.  (AR 830.) Examination notes that Plaintiff was well groomed, cooperative, and behavior was within cultural norms.  He had adequate social skills and reported being able to make and maintain peer relationships.  Speech was normal for the culture.  His general mood was depressed and anxious. Affect was restricted/limited.  He was oriented to person, place, time, and situation.  He denied delusions, hallucinations, distortions.  Intelligence was noted to be average, thought flow was logical and thought content was helpless/hopeless.  (AR 28, 831.)  Memory, abstraction, interpretation, judgment, and insight were intact.  (AR 832.)

The ALJ also considered Plaintiff's Individualized Educational Program (IEP) from September 7, 2018, which noted Plaintiff would be given specialized instruction in order to accommodate his emotional and behavior difficulties.  (AR 28, 1273.)

The ALJ considered a June 25, 2019, treatment plan in which his mother reported he was walking for exercise and was more relaxed.  Plaintiff reported that his medication helped to some extent and his depression had decreased from 7-8 to 2-3/10 with therapy at school starting weekly and helping.  (AR 28, 839.)

On November 15, 2019, Plaintiff stated his medication was helping, and he was doing well with less anger, and he was playing soccer.  (AR 29, 866.)  Examination was unremarkable, other than insight and judgment are impaired.  (AR 866.)

On January 6, 2020, Plaintiff reported sleeping well other than getting readjusted to return from school break.  He reported he was doing well with a more peaceful and happy mood on medication and his grades were passing.  His mother reported that Plaintiff was doing okay for the most part, but still had episodes where he gets overly angry and depressed over the abuse by his father.  Plaintiff played soccer for exercise.  (AR 29, 860.)  He was eating and usually slept well. He was doing well with the elimination of anger since Abilify had been discontinued.  Plaintiff continued to refuse therapy stating he did not want it.  He was sleeping well ten hours per night in recent months.  On examination, Plaintiff was noted to be well groomed, alert, and cooperative. Motor activity, cognition, speech, orientation, thought content, mood, and affective range were

1  normal.  Intelligence was average.  Insight and judgment were impaired.  (AR 860.)  He was noted

2  to be compliant on medication and was guarded and did not want to discuss issues.  (AR 29, 860.)

3      On March 23, 2020, Plaintiff reported doing well and sleeping well when not in school.

4  Plaintiff's mother requested medication to help control his anger.  She was reminded that exercise

5  and therapy would be helpful.  Plaintiff was averse to the exercise and therapy.  (AR 29, 1155.)

6  Sleep and appetite are noted to be normal, and Plaintiff was compliant with medication with no side

7  effects.  Plaintiff was well groomed, cooperative, and alert.  (AR 1155.)  Motor activity, cognition,

8  speech, orientation, thought content, mood, and affect are noted to be normal.  (AR 1155-56.)

9  Intelligence was average and insight and judgment were impaired.  Plaintiff was noted to be stable

10 on medication, but still had anger and sad feelings due to his history of abuse by father that need to

11 be addressed.  It is noted that although he is compliant with medication, Plaintiff refuses to attend

12 therapy.  (AR 1156.)

13      In the opinion the ALJ states,

14      On June 2020, Plaintiff's mother alleged he still struggled with depression and
        aggression.  He had since stopped taking his past medications and was recently
15      placed on Bupropion. She reported he gets along well with family for the most part,
        but stated he would get in arguments with her when in an angry mood. The claimant
16      was diagnosed again with depression and post-traumatic stress disorder (PTSD)
        (14F/18).
17

18 (AR 29.)  It is unclear which visit this notation refers to as the page cited does not contain the

19 information referenced.

20      A review of Exhibit 14F, shows that it contains notes from Uplift Family Services.  Plaintiff

21 was seen on June 1, 2020.  He and his mother reported that he had been struggling with depression

22 for at least six years. Plaintiff complained of irritability most days and becoming easily

23 angered/irritated with others.  His mother reported he was always in his room sleeping, complaints

24 of fatigue, and not wanting to do things with the family.  Plaintiff complained of feeling sad and

25 hopeless about his relationship with his father, his future, and things ever being good for him.

26 Plaintiff denied suicidal ideation for at least three months, but his mother stated he had suicidal

27 ideation two months prior and said the only reason he did not kill himself was to protect his younger

28 siblings. Plaintiff had been placed on Bupropion by an unknown physician on May 29, 2020.  (AR

1   1093.)  He was diagnosed with dysthymic disorder and PTSD.  (AR 1102.)

2   Plaintiff had appointments for May 4, 2020, and it is noted that Plaintiff did not show for his

3   appointment because he refused to get out of bed.  (AR 1152.)   On June 1, 2020, Plaintiff had an

4   appointment, and they were unable to reach him or his mother. (AR 1149.)

5   On June 15, 2020, Plaintiff was seen and reported he was doing well with no current

6   depression or anxiety and was sleeping well.  He denied any suicidal ideation. There were no anger

7   outbursts, and he was calmer on his medication.  (AR 1146.)  Examination is unremarkable other

8   than impaired judgment and insight.  (AR 1146-47.)  He is noted to be stable on his medication.

9   (AR 1147.)

10   Plaintiff was seen again on July 24, 2020, reporting continuing to do well with no anger

11   outbursts or suicidal ideation. However, it is noted that he is still adamantly refusing to attend

12   therapy.  (AR 1142.)  Examination notes remain the same. (AR 1142-43.)

13   In Plaintiff's October 6, 2020 IEP paperwork, his teachers' comments state he is a largely

14   respectful, intelligent student who can become distracted. Furthermore, one teacher noted he

15   appeared to be very social and seems to get along well with his peers.  Attendance and assignment

16   completion appeared to affect his grades, but he had expressed interest in Forensics with aspirations

17   to become a Crime Scene Investigator.  (AR 28, 1114.)

18   At a telehealth appointment on March 3, 2021, Plaintiff stated he was sad, but not depressed,

19   meaning he still speaks with other people.  Plaintiff's mother alleged he continued to get angry

20   when he has to do schoolwork.  (AR 29, 1107.)  However, it was noted he has a good group of

21   friends and was in the 10th grade. He denied suicidal ideation.  (AR 29, 1108.)

22   On December 22, 2021, Plaintiff's mother informed the provider that Plaintiff had been

23   avoiding treatment, because he felt it unnecessary.  (AR 29, 1337.)

24   Contrary to Plaintiff's allegations, the Court finds that the ALJ did consider Plaintiff's

25   history of self-harm, attempting suicide, and angry outbursts in finding that Plaintiff had a less than

26   marked limitation in his ability to care for himself.  Additionally, the ALJ considered the medical

27   opinions and prior administrative findings in the record.  (AR 29-30.)  No physician has found that

28   Plaintiff has marked limitations in any domain.

Ultimately, Plaintiff is seeking to have this Court reweigh the evidence and substitute the Court's opinion for that of the ALJ.  Here, the evidence is susceptible to more than one rational conclusion and the ALJ's decision must be upheld.  <u>Ford v. Saul</u>, 950 F.3d 1141, 1154 (9th Cir. 2020).  The Court finds that substantial evidence supports the ALJ's finding that Plaintiff has a less than marked limitation in his ability to care for himself.  Plaintiff's motion for summary judgment is denied; and Defendant's cross motion for summary judgment is granted on this ground.

**B.    Plaintiff's Symptom Complaints**

Plaintiff also contends that the ALJ only vaguely asserted that Plaintiff's statements are not entirely consistent with the medical evidence and other evidence in the record and then simply proceeded to summarize the treatment record.  (MSJ 9.)  Plaintiff argues that the ALJ did not properly evaluate his symptom complaints in compliance with the regulations and the failure to offer clear and convincing reasons to discount his testimony warrants remand.  (MSJ 10.)

Defendant counters that the ALJ properly discounted Plaintiff's symptom testimony finding that it was inconsistent with other evidence in the record.  (Opp. 8.)  Defendant seeks to have the decision affirmed.  (Opp. 9.)

Plaintiff replies that Defendant is offering analysis that directly contradicts the prevailing legal standard because the ALJ cannot reject his symptom testimony solely because it is inconsistent with the objective evidence.  Further, Plaintiff argues that Defendant has done nothing more than list Plaintiff's daily activities without providing more insight than the ALJ did in the decision itself. (Reply 3.)

1.    <u>Plaintiff's Hearing Testimony</u>

Plaintiff testified at the January 31, 2022 hearing.  (AR 76-84.)  Plaintiff was sixteen almost seventeen and was a junior in high school.  (AR 76.)  He sometimes would drive but did not have a driver's license or permit.  (AR 76-7.)  He would just drive when his mother sent him on an errand, like to the grocery store.  His mother takes him to school.  (AR 77.)

Plaintiff has three siblings, ages 6, 8, and 13.  Their relationship is complicated, but he gets along pretty well with his siblings.  (AR 77.)  His siblings stress him out a lot and he will get aggressive with them and start yelling at them.  That is pretty normal behavior for him, and he will

yell at them three times a week.  (AR 80.)

His favorite subject in school is history.  He does not participate in afterschool activities.  (AR 77.)  On nights and the weekend, he just stays home after school and stays in his room listening to music.  He does not play video games, watch movies or hang out with friends.  Plaintiff is on social media for an hour every two days or so.  On the weekends, he spends ten to twelve hours listening to music.  (AR 78.)  He sleeps a lot because he does not want to be awake.  (AR 80-1.)  He has four or five friends at school but does not hang out with them outside of school.  (AR 78.)

Plaintiff is taking his medications regularly and still has symptoms.  He still has anger issues with his mom and siblings and things are not so great at school.  His grades are not good.  They are really bad, F's, because he cannot concentrate well.  (AR 81.)  He has trouble concentrating because of stress and his anger.  There are times when he just cannot concentrate.  His attendance is a little better.  Plaintiff receives specialized instruction up to 538 minutes per week.  He is not sure why, but it has not helped him to do better in school.  (AR 82.)

His depression is not so great, but it is "somewhat good."  It is a little better.  Sometimes he still wants to harm himself when he is stressed.  (AR 82.)  To cope he lays down.  When he was harming himself, he was cutting himself and punching himself.  He has points where he cries a lot and will scratch his face.  He only does that at home.  He lasted punched or scratched himself two weeks ago.  He no longer cuts himself, but he still wants to.  (AR 83.)  He harms himself about once a month.  (AR 84.)

Some of his teachers are working with him one-on-one.  It has helped a little bit.  He understands things much better.  (AR 84.)

2.    Legal Standard

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").  Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant

must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.  In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.  Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

In addition to the medical evidence, factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  SSR 16-3p, at *5.

///

///

3.    Analysis

Here, the ALJ considered Plaintiff and his mother's statements during the hearing.

> The claimant and his mother allege the claimant is limited in his functioning due to a combination of mental health impairments.  The claimant stated he is a junior in high school and sometimes drives to the grocery store, but stated he has no license and his mother often takes him to the store.  He reported getting along "pretty good" with his siblings and that he spends much of his time at home listening to music. He stated he has four to five friends he will hang out with at school.  The claimant alleged his siblings will sometimes cause him anxiety and he will yell at them.  He stated he has been compliant with his medications for the past year, but stated he still suffers mental health symptoms, like anger and difficulty concentrating at school.  The claimant stated his depression is somewhat improved with medication but alleged he will still harm himself sometimes, like punching and scratching himself two weeks prior to the hearing.  The claimant alleged getting angry and yelling at his siblings a few times per week.
> . . .
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

(AR 27.)

**a.  Allegations Unsupported/Contradicted by the Objective Medical Evidence**

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence."  See Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony.  See Burch, 400 F.3d at 680–81.  Nevertheless, the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain and its disabling effects."  Burch, 400 F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ considered that Plaintiff alleged that he had difficulty concentrating (AR 81, 82), but that he was able to persist throughout the psychological examination (AR 25, 753). The ALJ

also considered that Plaintiff alleged that he was compliant with medication for the last year, but still had mental health issues, such as difficulty concentrating at school.  (AR 27.)  However, as the ALJ noted, Dr. Swanson found on examination that Plaintiff maintained adequate attention and concentration at the May 3, 2018 psychological examination.  (AR 753.)

The ALJ also considered that Plaintiff's mother stated that he had anger issues at home and that he had been suspended for fighting, but the ALJ noted that his teachers remarked that he was respectfully and appeared very social.  (AR 26.)  Specifically, the ALJ noted Plaintiff's October 6, 2020 IEP.  Plaintiff's algebra teacher stated, "Luis is very social and seems to get along well with his peers." Another teacher stated, "Luis is an intelligent young man that is a great addition to my class.  He can be distracted at times but is respectful and obedient when asked to re-engage with class work."  A math teacher who had previously had Plaintiff as a student stated, "His behavior was never an issue, and he was always very respectful."  (AR 1114.)

Ninth Circuit caselaw has also distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard.   See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) ("The ALJ ... identified several contradictions between claimant's testimony and the relevant medical evidence and cited several instances of contradictions within the claimant's own testimony.  We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence."); Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period and (2) symptom testimony conflicted with the objective medical evidence); Woods v. Comm'r of Soc. Sec., No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a lack of objective medical evidence may not be the sole basis for rejection of

symptom testimony, inconsistency with the medical evidence or medical opinions can be sufficient." (emphasis in original)).

The ALJ further noted that Plaintiff was cooperative and pleasant at many of his appointments.  (AR 26.)  The ALJ cited the psychological examination by Dr. Swanson who noted that Plaintiff was friendly and cooperative.  (AR 753.)  She also noted an August 13, 2018 visit which states that Plaintiff was cooperative throughout the visit.  (AR 831.)  Further, review of the medical record which the ALJ noted in her decision provide additional support for the ALJ's finding that Plaintiff was noted to be cooperative at his medical appointments.  (AR 758, 768, 771, 782, 831, 860, 866, 1155.)  In applying the clear and convincing standard, the Ninth Circuit affirmed "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  Carmickle, at 533 F.3d at 1161.  The ALJ identified specific contradictions with the record which is a clear and convincing reason to reject Plaintiff's symptom testimony.  Johnson, 60 F.3d at 1434.

### b.    Improvement with treatment

The ALJ also noted that Plaintiff and his mother reported that his symptoms improved when he was compliant with medication and participated in therapy, noting generally normal examination findings.  (AR 28, 82, 768, 771, 782, 839, 860, 866, 1142, 1146-47, 1146, 1155-56.)  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."  Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).  Specifically, Plaintiff reported that his depression decreased from 7-8 to 2-3 out of 10 with therapy and medication.  (AR 839.)  Substantial evidence supports the ALJ's finding the Plaintiff's symptoms are improved when he is compliant with treatment.  This is a clear and convincing reason to reject Plaintiff's symptom testimony regarding the severity of his mental impairment.

### c.    Failure to comply with treatment

Further, the ALJ noted that Plaintiff on occasion refused medication and refused to participate in recommended therapy.  (AR 28, 29, 752 (ceased taking medication), 782 (refused medication), 793 (had not taken medication in five days), 830 (poor medication compliance as he often misses dose), 860 (refuses to attend therapy because does not want it), 1155 (adverse to

1  exercise and therapy).)  Finally, the ALJ considered that Plaintiff's mother reported that he had
2  been avoiding treatment because he felt it was unnecessary. (AR 29, 1337.)  The ALJ may properly
3  rely on " 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed
4  course of treatment.  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1113 (9th Cir. 2012); <u>Fair v. Bowen</u>, 885
5  F.2d 597, 603 (9th Cir. 1989).  Here, there is substantial evidence in the record that the reason
6  Plaintiff refuses to comply with medication and therapy is because he does not believe that he needs
7  it.  The ALJ can reasonably find that Plaintiff's belief that he does not need medication or therapy
8  and fails to comply with his providers recommendations for treatment contradicts his statements
9  regarding the severity of his symptoms.  The ALJ's finding that Plaintiff failed to comply with
10  treatment is supported by substantial evidence and is a clear and convincing reason to reject
11  Plaintiff's testimony as to the severity of his symptoms.

12       The Court finds that the ALJ provided clear and convincing reasons, that are supported by
13  substantial evidence in the record, to reject Plaintiff's complaints regarding the severity of his
14  symptoms.  Accordingly, Plaintiff's motion for summary judgment shall be denied and Defendant's
15  cross motion for summary judgment shall be granted on this ground.

16                                          **V.**

17                              **CONCLUSION AND ORDER**

18       In conclusion, the Court denies Plaintiff's motion for summary judgment and grants
19  Defendant's cross motion for summary judgment and finds no harmful error warranting remand of
20  this action.

21       Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is
22  DENIED and Defendant's cross motion for summary judgment is GRANTED.  It is FURTHER
23  ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and
24  against Plaintiff Luis Ramon Salas Ramirez.  The Clerk of the Court is directed to CLOSE this
25  action.

26
27  IT IS SO ORDERED.

28  Dated:   **April 11, 2024**

24

UNITED STATES MAGISTRATE JUDGE